**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,     :
                           :
        Plaintiff,          :    Case No. 2:15-cr-228
                           :
                           :    Judge Michael H. Watson
                           :
                           :    Magistrate Judge Deavers
         v.                :
                           :
JOHN P. RAPHAEL,         :
                           :
        Defendant.      :

**DEFENDANT'S FURTHER SENTENCING MEMORANDUM**

**I.**      **Introduction**

Per the Court's request, this Memorandum will address the May 18, 2016, "alternate guideline calculations" submitted by the United States Probation Office ("USPO") and the government's Reply Brief in Aid of Sentencing filed May 25, 2016. Each recommended that the base offense level for Mr. Raphael be adjusted and enhanced under U.S.S.G. § 3B1.3 and asked that the Court impose a sentence of imprisonment at the high end of Level 19 of the guidelines.

As pointed out in the defendant's Sentencing Memorandum, the two (2) level enhancement proposed under U.S.S.G. § 3B1.3 is contrary to the Sixth Circuit's pronouncements of the sentencing guidelines applicable to Mr. Raphael. Illustrating its failures of proof, and rather than providing the Court with a record of support, the government instead litters its Reply with hyperbole and inapposite case law, while disparaging what it describes as the defendant's unrepentant tone and manner of presentation in his Sentencing Memorandum. The government's Reply, like its earlier Memorandum, suffers from the absence of evidentiary support. This is

actually quite understandable in that none exists to support the government's assertions or conclusions around its efforts to convince the Court to "enhance" or to "adjust" upwardly Mr. Raphael's sentence.  The government resorts to the slings and arrows that remain in its quiver—groundless statements, neither supported by nor found in the record or law of this case.

Mr. Raphael's total offense level, following the undisputed adjustment made for his acceptance of responsibility, is 17, and his Criminal History Category is I.  The advisory guideline sentencing range is just one of a number of factors the defendant asks this Court to consider in fashioning a sentence which complies with the purposes of 18 U.S.C. § 3553(a)(2).

## II.    Argument

### A.    The Defendant Did Not Hold a Position of Trust Nor Did He Use a Special Skill with the "Victim" of His Conduct.

Both the USPO and the Government advance the notion that Mr. Raphael's advisory guideline range should be increased by two levels pursuant to U.S.S.G. § 3B1.3.  While each submission pays lip service to the guideline Application Notes, they nonetheless invite the Court to pay no attention to them or to the practical application of U.S.S.G. § 3B1.3 found in the decisions of the courts in this Judicial Circuit.

### 1.    The USPO Alternate Guideline Calculations.

The USPO's May 18th submission changed the base offense level from that in the PSR, and suggests a two level enhancement under § 3B1.3. The enhancement is wholly inappropriate here. Paragraph 3 of the "alternate guideline calculations" repeats and paraphrases the applicable language of the guideline, while the quoted portions which appear below from Paragraph 4 offer the supposed rationale for the enhancement (**with defendant's comments in boldface type**) proposed by the USPO:

- "Defendant abused his position of trust with Redflex as a consultant," **which is nothing more than a conclusory statement without any factual citation or support;**

- "He [Mr. Raphael] represented to Redflex that he had access and influence with Council members of Columbus," **which is the purpose for which lobbyists are universally retained;**

- "He used his influence to ensure Redflex would be chosen as the contractor," **which again is what a lobbyist is hired to do;**

- "He [Mr. Raphael] represented to Redflex that campaign contributions had to be made to obtain and maintain its contracts," **which is the offense to which a guilty plea was entered;**

- "The upper management at Redflex believed the company would lose contracts if payments were not made," **which again is the base offense to which he pled guilty;**

- "The Defendant's position caused Redflex to believe there was no alternative way to obtain or maintain the contracts," **a conclusion without benefit of any facts;**

- "It is believed Mr. Raphael's position of trust with Redflex both facilitated and concealed the offense and a 2 level enhancement is appropriate," **a "belief," rather than a fact-based conclusion, which is not substantiated by evidentiary support.**

In short, the USPO "believes" that there was an unexplained position of trust between Mr. Raphael and Redflex which facilitated and concealed the offense. Neither the unidentified position of trust nor skill is demonstrated to have "significantly" facilitated or concealed the offense, although each element is required to be present there to be an enhancement to the base offense.

As is abundantly clear, there was never any "concealment of the offense" from Redflex, certainly not by Mr. Raphael or as a result of his "position." Redflex and its senior executives

were fully aware of Mr. Raphael's requests for monies which were to be used as campaign contributions.  In fact, monies were asked for and obtained by Mr. Raphael from Redflex for the express purpose of making campaign contributions. Considering that campaign contributions were an ordinary course of business knowingly utilized by Redflex throughout the municipalities and jurisdictions in which Redflex conducted and attempted to conduct business, it cannot be said that Ms. Finley and Mr. Rosenberg were unaware of Mr. Raphael's actions in this specific context.

Similarly, there are no facts which evidence an abuse by Mr. Raphael of a "position of trust" with Redflex in a manner that "significantly facilitated the commission of the offense."  The USPO does not advocate for an enhancement based upon the "special skill" language of the guideline.  Accordingly, the USPO "alternate guideline calculations" offer no factual, evidentiary or legal authority to support a two (2) level "victim related adjustment" under U.S.S.G. § 3B1.3.

**2. The Government's U.S.S.G. § 3B1.3 Analysis is Flawed.**

The government's Reply fares no better.  It offers no authority of an evidentiary or legal nature which justifies an increase to Mr. Raphael's advisory guideline range. Instead, the government seems intent only to chide and deride as "flippant" the Defendant's disagreement with the government's position, rather than the government meeting its burden of proof.  The cases offered by the government in its initial sentencing memorandum are readily distinguishable from the proposition for which the government claims they stand.  The cases are inapposite, and therefore, of little to no value to this proceeding.

Virtually every one of the Sixth Circuit cases offered by the government relate to situations in which the defendant personally benefitted (i.e., received a monetary gain) as a result of dishonest actions (i.e., the conduct of the offense) *vis-a-vis* his employer or organization on whose behalf he was acting.  The bankers in *U.S. v. Humphrey* and *U.S. v. Brogan*; the drug counselor in *U.S. v.*

*Gilliam*; the tax return preparer in *U.S. v. Sedore*; the superintendent of the plant in *U.S. v. White*; the contractor hired by the school district in *U.S. v. Hudson*, all personally enriched themselves by taking advantage of the position each held with their respective organization.  Their personal benefit was to the detriment of the entity who placed them in the position they subsequently abused. Yet, notwithstanding (i) the criminal conduct of the defendant in each of these cases, (ii) that some abused their position and (iii) some abused their employer's apparent trust, some were found not to hold positions of trust such that the 2 level enhancement imposed by the district court under U.S.S.G. § 3B1.3 was reversed on appeal.

In sharp and obvious contrast, Mr. Raphael did not take a single penny, nickel, dime or dollar of Redflex money for personal gain.  He did not, to paraphrase the Government's initial salvo in its sentencing memorandum, "line his pocket."   Rather, just as he said he would do, the money received from Redflex over a ten (10) year period was used for campaign contributions. Thus, unlike each of the defendants in the cases appearing at pages 10-13 of the Government's sentencing memorandum, Mr. Raphael did not personally benefit by taking someone else's money or defrauding the government and putting it in his pocket.

Finally, the cases offered by the government actually militate against a § 3B1.3 enhancement under the facts present here.  For example, in *United States v. Brogan*, 238 F.3d 780 (6th Cir. 2001), Brogan pled guilty to bank fraud and challenged the enhancement to his sentence under § 3B1.3.   In finding that he held no position of trust, the Court of Appeals said that "this sentence enhancement is meant to discourage violations of the kind of trust we show to our fiduciaries and public officials – and we conclude that the misplaced reliance and the lack of supervision . . . showed toward Brogan was not this sort of institutionalized and necessary trust

relationship. Accordingly, we reverse the enhancement of Brogan's sentence by 2 levels for abuse of a position of trust . . . ." 238 F 3d at 786.

Similarly in *U.S. v. Humphrey*, 279 F.3d 372 (6th Cir. 2002), the Court affirmed the conviction but vacated the sentence by determining that neither prong of § 3B1.3 had been established. While finding that the defendant abused her position and the bank's apparent trust in her to embezzle cash from the bank, she did not hold a position of trust." 279 F 3d at 381. The *Humphrey* analysis and outcome applies squarely here, for even were the Court to find that Mr. Raphael abused his position as a lobbyist for Redflex, he simply did not hold a position of trust (fiduciary in nature) as minimally required for the enhancement under U.S.S.G. § 3B1.3.

**B.     Mr. Raphael Has Accepted Responsibility for His Conduct.**

The USPO "alternate guideline calculations" (¶9) as well as the PSR (¶36, p.11), state that "The defendant has clearly demonstrated acceptance of responsibility for the offense." The government did object to this conclusion or to the corresponding decrease by 2 levels under U.S.S.G. § 3E1.1(a) to Mr. Raphael's base offense level.

The USPO "alternate guideline calculations" (¶10) as well as the PSR (¶37, p.12), state that "The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty." The government has not objected to this conclusion or to the corresponding decrease by 1 level under U.S.S.G. § 3E1.1(b) to Mr. Raphael's base offense level.

Yet the government's recent Reply (p.8), contrary to its previous acquiescence, concurrence and acknowledgment that Mr. Raphael accepted responsibility and assisted law enforcement authorities, contradicts its prior positon. The government now characterizes the defendant's behavior as "recalcitrant," his conduct as "obstructive," and finally, as "attempting to

obstruct the investigation." The government is wrong and its opportunity to object to this three (3) level adjustment has long since passed. If it truly had facts to support these assertions, surely the government would have previously raised them for the Court. But it has none and did not do so.

Instead, the government does that which it accuses the defendant of having done- i.e., displaying a strident, unrepentant and self-serving tone. And the government has done so even though it is clear that Mr. Raphael did not engage in "obstructive conduct" as used in or defined within the context of the sentencing guidelines. As previously set out in the Defendant's Sentencing Memorandum (pp. 13-14), the requirements of U.S.S.G. § 3C1.1 have not been met, and no adjustment is warranted. Still, the government points to Application Notes 3 and 5 of § 3C1.1 and asks that the Court "sanction" Mr. Raphael for conduct that neither "obstructs" nor "impedes" the administration of justice.

The government's musings on this point are undercut by its abject refusal to consider Application Notes to § 3B1.3, which apparently fail to serve its purpose in that context. The only "relevant conduct" for the Court to consider on this point is Mr. Raphael's acceptance of responsibility and his assistance of law enforcement authorities. This acknowledged conduct of assistance trumps the government's request to sentence Mr. Raphael at the high end of any guideline range.

### C. Sentencing Disparities with those of Rosenberg, Finley & *Abbey*.

What must seem Incredulous to any impartial observer is the government's continued reverence for the "assistance" of Aaron Rosenberg and Karen Finley, each of whom pled guilty to multiple felonies involving the bribery of elected, public officials in Illinois and Ohio. Mr. Rosenberg and Ms. Finley, when caught and when faced with years of incarceration, chose instead

to make deals with the government in exchange for their "cooperation."  The government extols these virtues of Rosenberg and Finley by saying each "cooperated in two separate cases", "provided trial testimony" and according to the government, was only acting under Mr. Raphael's "guidance."  The illogic of the government's posture towards these individuals has already been addressed in the defendant's Sentencing Memorandum.

But the hypocrisy of the government's sentencing positon towards Mr. Raphael is clearly see at p.5, fn.3 of its recent Reply. There the government indicated that Ms. Finley's sentence will include a three-level reduction for her acceptance of responsibility, which is precisely the same as that to which the government has agreed is to be applied to Mr. Raphael.  But, the government characterizes the degree of her "acceptance" as "substantial assistance with the investigation and her timely agreement with the prosecution" as contrasted with Mr. Raphael, who the government wrongly claims not only failed to assist the investigation, but who actively obstructed it.

Such unsubstantiated criticism and tortured editorial commentary comes from the same government that **has agreed with and not objected to applying the same three-level reduction to Mr. Raphael's sentence because of his (i) acceptance of responsibility and because he has (ii) assisted authorities in the investigation or prosecution of the defendant's own misconduct.**

The *Abbey* case may, as claimed by the government, be an aberration in time, but as a Sixth Circuit decision involving the bribery of an elected public official, it still possesses comparative relevance and value to this proceeding.  The government's dismissal of *Abbey* is as troubling as is its rendition of the heroic efforts of assistance by Rosenberg and Finley. According to the government, *Abbey* is of minimal precedential value since it involved only a single bribe.  Mr. Raphael is not accused of any bribe and has not been charged with nor has he pled guilty to an

offense involving the bribery of an elected, public official. The government next dismisses the import of *Abbey*, claiming the bribery amount of $20,000 to be insignificant. Yet here, the amount involved in the base offense ($75,000 in campaign contributions obtained over 10 years) is nonetheless factored into the guideline calculation just as was in *Abbey*.

In light of the advisory nature of the sentencing guidelines today, the Court can and should be informed by what has taken place in this Judicial Circuit in cases such as Rosenberg, Finley and *Abbey*. The goal and admonition of 18 U.S.C. § 3553(a)(6) to avoid unwarranted sentence disparities is limited not by time, but rather, is subject to the consideration of comparative records and comparative conduct of the defendants, and the Court's use of common sense and fundamental fairness.

## III. Conclusion

For all the foregoing reasons, as well as those set forth in his Sentencing Memorandum, Mr. Raphael requests that the Court fashion a sentence that is significantly reduced from that urged by the government and USPO, yet one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2).

Respectfully submitted,

*/s/ S. Michael Miller*
S. Michael Miller      (0068882)
Roger P. Sugarman   (0012007)
KEGLER BROWN HILL + RITTER
A Legal Professional Association
65 East State Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614)462-5400
Facsimile: (614) 464-2634
mmiller@keglerbrown.com
rsugarman@keglerbrown.com

Attorneys for Defendant
John P. Raphael

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing DEFENDANT'S FURTHER SENTENCING MEMORANDUM was filed the 1st day of June, 2016, with the Clerk of Courts via the CM/ECF System, which will send electronic notification of such filing to all counsel of record.

*/s/ Roger P. Sugarman*
Roger P. Sugarman (0012007)