IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : No. 2:15-CR-228 |
| vs. | : |
| | : JUDGE WATSON |
| JOHN P. RAPHAEL, | : |
| Defendant. | : |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SURREPLY

The United States of America, by and through the undersigned counsel, submits this short response to defendant John P. Raphael's "Further Sentencing Memorandum."

The defendant's surreply brief adds nothing new and, instead, superficially criticizes the government and the U.S. Probation Office ("USPO") while ignoring the most obvious problem: Both the government and the USPO view him as the most culpable person in the scheme; he has barely accepted responsibility for his conduct; he has tried to insulate and protect several elected public officials; for years he corrupted the campaign finance reporting and government contracting processes; he lied to law enforcement and the USPO; and a co-member of the scheme, Karen Finley, who is far less culpable than the defendant, is facing a sentence of 27-33 months even with the benefit of a government motion to reduce her sentence pursuant to United States Sentencing Guideline ("U.S.S.G.") 5K1.1.  The defendant's sentence, under these circumstances, should be greater than Finley's sentence at a bare minimum.  The government therefore recommends a term of imprisonment of **37 months** and a fine of **$60,000**.

There are only three issues for the Court to resolve during the sentencing hearing. **First**, the Court must decide whether to impose a sentence at the high end of the applicable guideline range because of the defendant's obstructive conduct. The defendant criticizes the government for shooting "slings and arrows" and making "groundless statements," Def. Surreply Br. at 2, because the government and the USPO *both* recommend that the defendant should be sentenced to the high end of Level 19, which is the applicable guideline range.

Here, the defendant made at least three false statements when he was interviewed by the FBI on June 3, 2015. Specifically, to conceal the nature and scope of his dealings with Redflex and officials in Columbus and Cincinnati, the defendant falsely stated that (a) he never asked Redflex for campaign contributions; (b) there was no correlation between money that the defendant received from Redflex and contributions to public officials; and (c) Redflex never made any indirect campaign contributions to public officials in Columbus. The defendant compounded the problem by not providing candid answers to the USPO during his initial interview, causing the USPO to have to interview him a second time. Where, as here, the defendant has engaged in obstructive conduct, the application notes to U.S.S.G. § 3C1.1 state that a defendant can and should be sentenced to the high end of the guideline range.

**Second**, the Court needs to determine whether the defendant abused a position of trust or used a specialized skill thereby warranting a two level increase in his guidelines calculation pursuant to U.S.S.G. § 3B1.3. In his surreply, the defendant, without evidentiary support, disputes the USPO's finding that this two-level enhancement applies. *See* Def. Surreply Br. 2-3.

As the Court knows, when a defendant disagrees with the findings and conclusions of the USPO, he cannot simply ask the Court to disregard the findings and, instead, must provide proof. In *United States v. Lang*, 333 F.3d 678 (6th Cir. 2003), for instance, the Sixth Circuit explained

that a defendant must do more than make a conclusory objection to the PSR's findings to raise a dispute with the meaning of Rule 32 of the Federal Rules of Criminal Procedure:

> We agree with the reasoning of the Seventh Circuit that "[a] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR."

*Lang*, 333 F.3d at 681 (quoting *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir.1994) (citations and internal quotation marks omitted)). *See also United States v. Dolan*, No. 95-1769, 1996 WL 599819 at *7 (6th Cir. Oct.17, 1996) (unpublished) ("[A] defendant who challenges factual allegations in the PSR [presentence report] has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question.").

Here, the USPO expressly found that the defendant abused his position of trust as Redflex's consultant and lobbyist. *See* PSR (Alternative Calculation 5/18/16) ¶¶ 3-4. The government agrees with the USPO's position, which is well-founded and amply supported by the underlying record and the "Statement of Facts" accompanying the defendant's Plea Agreement. The defendant, in contrast, has only offered an insufficient, bare denial in the face of the "Statement of Facts" which sets forth 12 examples, covering 8 years, wherein the defendant is unrelenting in his pursuit of his client's money.

The defendant has also failed to refute the numerous cases cited by the government that support the application of U.S.S.G. § 3B1.1. Instead, he argues in a conclusory manner that *all* of the government's cases are inapt because the defendants in those matters profited from their

illegal conduct, whereas he did not. *See* Def. Surreply Br. at 6 ("In sharp and obvious contrast, [the defendant] did not take a single penny, nickel, dime, or dollar of Redflex for person gain.").

Whether the defendant profited from his extortion scheme is irrelevant to the issue of whether he abused a position of trust or used a specialized skill. In any event, the defendant's factual assertion is incorrect. The defendant not only profited handsomely by receiving monthly consulting payments and success fees from Redflex, he also paid tens of thousands of dollars in conduit campaign contributions in his own name without having to spend—as the defendant puts it—"a single penny, nickel, dime, or dollar." Indeed, while his clients, like Redflex, fronted the costs and paid the donations—thereby saving the defendant an out-of-pocket expense—the defendant took full credit for the donations which, of course, benefitted his lobbying business and allowed him to curry favor with the elected public officials. The defendant, moreover, even went so far as to complain to Redflex that his consulting fees should be grossed up to account for the tax liability he was incurring due to his efforts to disguise the campaign donations as false consulting payments.

At the end of day, the test set forth in *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000) has been met. The defendant was afforded a considerable level of discretion, and he controlled the flow of information between his client (Redflex) and the elected public officials. He was also retained specifically because of his lobbying skills and political connections. Redflex trusted the defendant and, based on his representations, the company believed it had to pay the extorted campaign contributions or face the consequence of losing a valuable and lucrative contract.

**Third**, the Court must determine whether there is *any* basis for a downward variance or departure pursuant to 18 U.S.C. § 3553(a). The short answer is no.

The defendant's only argument is that a below-guideline sentence is warranted to avoid a sentencing disparity when comparing the defendant to Finley, Rosenberg, and the outcome in *United States v. Abbey*, 560 F.3d 513 (6th Cir. 2009).  The government has already explained that *Abbey* is an "apples to oranges" comparison.  *See* Govt. Reply Br. at 5-6.  The defendant now appears to concede as much, recognizing that *Abbey* is an "aberration in time."  Def. Surreply Br. at 8.  Among other things, the defendant herein extorted his own client for eight years asking for a total of about $150,000 and getting over $70,000 in payments. *Abbey* involved a one-time transfer of a $20,000 property and subsequent assistance by a public official.

Likewise, the government has made clear that Rosenberg would have faced a much more severe penalty but for a potential legal impediment issue arising from the immunity that he received in the Northern District of Illinois.  *See* Govt. Reply at 4.  Finley, as noted above, is facing at least 27-33 months in this district despite her substantial assistance.  She is also facing a statutory maximum, five-year penalty in Chicago, which will run concurrently.  The great irony in the defendant's position is that a sentencing disparity will occur *only* if the defendant is given a below-guideline sentence in this case, particularly when considering his more substantial role as the instigator as Finley and Rosenberg were following the defendant's direction and guidance.

Finally, when considering the appropriateness of downward departure or variance, it is worth remembering the scope of the defendant's scheme.  He has not only refused to cooperate with the government, thus potentially protecting other wrongdoers, the defendant also made a mockery of campaign finance reporting requirements for numerous election cycles by utilizing straw donors to hide Redflex corporate payments.  The defendant has tainted and undermined the government procurement process in Columbus and thus likely deprived legitimate businesses the

opportunity to obtain contracts in full transparency. In sum, the USPO and the government have both made clear there are no factors warranting a downward departure or variance.

                                               Respectfully submitted

                                               BENJAMIN C.GLASSMAN
                                               Acting United States Attorney

Dated: June 6, 2016                      By:    */s/ J. Michael Marous*
                                               J. MICHAEL MAROUS (0015322)
                                               Assistant United States Attorney
                                               303 Marconi Boulevard, Suite 200
                                               Columbus, Ohio 43215
                                               Telephone:  (614) 469-5715
                                               Facsimile: (614) 469-5653

                                               RAYMOND N. HULSER
                                               Chief, Public Integrity Section

                                               */s/ Edward P. Sullivan*
                                               EDWARD P. SULLIVAN
                                               Trial Attorney, Public Integrity Section
                                               Criminal Division
                                               U.S. Department of Justice
                                               1400 New York Avenue, 12th Floor
                                               Washington, D.C. 20530
                                               Telephone: 202-514-1412
                                               Facsimile: 202-514-3003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed the 6th day of June, 2016, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to S. Michael Miller, Esquire, and Roger P. Sugarman, Esquire, counsel of record for the defendant.

                                              *s/ J. Michael Marous*
                                              J. Michael Marous
                                              Assistant United States Attorney

Dated:   June 6, 2016